# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2550

_____

Gregory A. Scott,

   Appellee,

 v.

County of Ramsey; Ramsey County
Sheriff's Department,

   Appellants.

\*  
\*  
\*  
\*  
\*  Appeal from the United States  
\*  District Court for the District  
\*  of Minnesota.  
\*  
\*  
\*  
\*

_____

Submitted:  March 12, 1999

Filed:  June 1, 1999

_____

Before BEAM and HEANEY, Circuit Judges, and FENNER,[1] District Judge.

_____

BEAM, Circuit Judge.

  Gregory Scott (Scott), a former deputy, was terminated shortly after he participated in an internal sexual harassment investigation.  He sued his employer, the Ramsey County Sheriff's Department (County), for discriminatory retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e5 and in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. §§

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

363.01-.14. The jury returned a verdict for Scott on the MHRA claim, and the district court[2] found for Scott on his Title VII claim. The County appeals the district court's denial of its motion for judgment as a matter of law, and argues the district court erred in including a condonation jury instruction. We affirm.

## I.   BACKGROUND

Scott began working as a deputy sheriff for Ramsey County in July 1990. As is the case with all new deputies, Scott was subject to a one-year probationary period, during which time he was an at-will employee and could be fired for any reason. Scott was assigned to work in the Ramsey County Adult Detention Center. In his six- month performance evaluation (completed March 12, 1991), Scott was warned that he should be more careful about his use of sick time. On June 22, Scott received his performance review for the end of the probationary period. He was rated as "meets standards" in all relevant categories of performance, including attendance. In the area for comments, his supervisor wrote "Deputy Scott knows and does his job well. In his 6 mo Eval (sic) it was noted he had an extended sick leave usage. I believe this was just bad luck. Deputy Scott has not used any sick time since."

On the same day that he received his second performance evaluation, Scott was ordered to give a statement in an internal investigation regarding a sexual harassment claim that had been filed by another probationary deputy, Mark Kolasa. The deputy complained of inappropriate and offensive sexual behavior and comments by two female deputies, and named Scott as a person with first-hand knowledge of the problem. Kolasa further alleged that his supervisor, Sergeant Biehn, was aware of the behavior and had failed to take any remedial action. Biehn supervised both Scott and Kolasa. Scott gave a recorded statement on June 26 that confirmed the inappropriate

---

[2]The Honorable David S. Doty, United States District Court Judge for the District of Minnesota

comments by the female deputies. Scott also stated that he was sure that Biehn was aware of the behavior, and that he was not aware that Biehn had taken any corrective action. During the first week of July, three to five days after receiving the report of the completed internal affairs investigation, the County's undersheriff ordered a subordinate to assemble negative information regarding Scott for the purpose of documenting his termination, despite the fact that he had seen the favorable end-of-probation performance review. On July 25, Scott was terminated. At this time, Scott was given his "Report of Permanent Appointment of Probationary Appointee" form, which stated that his attendance and observance of work hours were unacceptable, his personal conduct was marginal, and his job performance was satisfactory.

Scott filed this action, alleging that he was terminated in retaliation for participating in a protected activity. At trial, the County advanced abuse of sick leave and missed training as the reasons Scott was terminated, pointing out that shortly after his final favorable review, Scott missed a training class and used another sick day. Scott presented evidence that other probationary deputies had used more sick leave than he and were not terminated. He also showed that he was the only individual, who, in spite of receiving a favorable end-of-probation review, was not retained.

The MHRA claim was tried to the jury, while the Title VII claim was tried to the court. The court, without objection, advised the parties that it would use the jury's verdict on the MHRA claim in an advisory capacity. The jury, in response to a special interrogatory, found that Scott's participation in the investigation was a motivating factor in the County's decision to terminate him. The court found for Scott on the Title VII claim. The jury also awarded Scott approximately $174,000 in back pay, and $126,000 in compensatory damages. The County moved for judgment as a matter of law, or in the alternative, for a new trial. The motion was denied.

Ramsey County appeals, arguing that the evidence fails to establish that there was a causal connection between Scott's participation in the investigation and his

termination. The County also argues that Scott did not prove that the legitimate reason advanced by the County was a mere pretext for discriminatory retaliation. The County also asserts a new trial is warranted because it was prejudiced by a jury instruction.

## II. DISCUSSION

We review a district court's denial of a motion for judgment as a matter of law very narrowly. See Worthen Bank & Trust Co., 748 F.2d 1269, 1273 (8th Cir. 1984). Applying the same standard as the district court, we view all evidence in the light most favorable to the verdict and reverse only if no reasonable jury could have returned a verdict for the non-moving party. See Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997) (en banc), cert. denied, 117 S. Ct. 2510 (1997). We resolve all factual conflicts in favor of the non-moving party, and give that party the benefit of all reasonable inferences, and assume as true all facts supporting the verdict which the evidence tends to prove. See id. We must uphold the denial of the County's motion as long as reasonable jurors could differ as to the conclusions that could be drawn from the evidence. See Norton v. Caremark, Inc., 20 F.3d 330, 334 (8th Cir, 1994).

The distribution of evidentiary burdens in employment discrimination cases such as this is well settled. Both the jury's verdict on the MHRA claim and the court's decision on the Title VII claim are evaluated under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ryther, 108 F.3d at 836; Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983). To establish a prima facie case of retaliation, the plaintiff must show that he engaged in a protected activity, that the defendant took adverse action against him, and that there is a connection between the two. See, e.g., Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). After this initial showing in made, a presumption of retaliation arises, and the burden of production shifts to the defendant to advance a legitimate reason for the employment action, in this case, termination. See Ryther, 108 F.3d at 836. Once the defendant succeeds in advancing a legitimate reason for the

adverse action, the presumption drops out and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11(1993)). In some situations, this can be shown indirectly by establishing that the defendant's proffered reason is merely a pretext for retaliation. See Hicks, 509 U.S. at 507-08. However, the ultimate burden of persuasion remains with the plaintiff to show that the termination was motivated by intentional retaliation. See id. at 508.

As in most cases, Scott's evidence of pretext and retaliation is indirect and circumstantial. The County argues that Scott's evidence is insufficient to establish the causal connection between the investigation and his termination, or that the County's stated reason was a mere pretext for intentional retaliation. "Our task as an appellate court is not to reach separate conclusions on the adequacy of the evidence adduced at each of the three McDonnell Douglas stages of proof—it is simply to decide whether the record supports the ultimate finding of discrimination." MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1057 (8th Cir. 1988) We need not indulge in an exhaustive recitation of all the evidence produced at trial. Scott's evidence showed essentially three things: that his termination and the stated reasons for it were inconsistent with his performance evaluation; the close temporal proximity of his participation in the investigation and his termination; and disparate treatment. Additionally, the County's witnesses gave conflicting testimony.

The only argument we need address here is the County's contention that the evidence of disparate treatment falls short as a matter of law because Scott failed to establish that he and the other employees were similarly situated in all relevant respects. This strong showing by the plaintiff is required when the only evidence of pretext or discrimination is disparate treatment. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). However, when as here, the evidence of disparate treatment is offered as one component of circumstantial proof of pretext, the "evidence does not need to reach the degree of certainty required of plaintiffs who present no

-5-

proof of discrimination besides [disparate treatment]." Bevan v. Honeywell, Inc., 118 F.3d 603, 611 (8th Cir. 1997) (citing MacDissi, 856 F.2d at 1058). Given the evidence presented, a reasonable jury could disbelieve the County's proffered legitimate reason and infer the causal connection between Scott's protected activity and his termination. See Ryther, 108 F.3d at 836. We agree with the district court that reasonable inferences support Scott's prima facie case as well as the ultimate determination of retaliation. We have reviewed the record and have carefully considered the County's remaining evidentiary arguments and find them to be without merit.

The County next argues that it should be granted a new trial because it was prejudiced by the erroneous inclusion of a condonation instruction in the court's charge to the jury. The jury instruction states:

> An employer may give up its right to discharge an employee if the employer repeatedly condones or excuses the employee's conduct. An employer gives up the right to discharge an employee for continuing violation of the employer's rules or policies if the violations have gone unpunished in the past.

The County argues that, while it is an accurate statement of Minnesota law, the instruction was not warranted by the facts, and it misled the jury to believe the County had waived its right to fire Scott for a legitimate and non-discriminatory reason. We find that although the instruction is arguably warranted by the evidence, the doctrine of condonation is irrelevant to the theory of a retaliation case. Whether the County had the *right* to fire Scott for abuse of sick leave and missed training, has no bearing on whether the County actually *did*. In a retaliation case, the employer can fire an employee for any reason–legal or not–as long as retaliation was not the motivating factor. The existence or nonexistence of any right to fire Scott does not make the County's retaliatory motivation more or less probable. Thus we find that the inclusion of the condonation jury instruction may have been error. However, we need not reach the issue because, even if it was error, it was harmless error.

We must evaluate the entire charge to the jury, and we will reverse only if the jury instructions as a whole contained an error or errors that affected a substantial right of a party. See id. at 846. Taken as a whole, there was no reversible error in the charge to the jury. The jury was also instructed that "[e]mployment decisions or actions can be made for a good reason, bad reason or no reason at all, but they cannot be based on intentional retaliation," and that it could not find for Scott unless it found that his "participation in the investigation was a motivating factor in Defendant's decision." The jury specifically found that Scott's termination was motivated by retaliation. This fact alone imposes liability on the County regardless of whether Scott's at-will status had been modified by the County's acceptance of his behavior.

The County also claims that the district court abused its discretion in denying the County's motion for remittitur. Upon careful review, we find no abuse of discretion.

## III. CONCLUSION

The judgment of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.