896 So.2d 787 (2005)
Ann E. SNOW, Appellant,
v.
RUDEN, McCLOSKY, SMITH, SCHUSTER & RUSSELL, P.A., Appellee.
No. 2D03-5188.
District Court of Appeal of Florida, Second District.
January 19, 2005.
Rehearing Denied February 22, 2005.
*789 Karen Coolman Amlong and William R. Amlong of Amlong & Amlong, P.A., Fort Lauderdale, for Appellant.
Maurice M. Garcia of Abrams Anton P.A., Hollywood, for Appellee.
CASANUEVA, Judge.
Ann E. Snow appeals a final judgment that dismissed with prejudice her two-count second amended complaint against her former law firm, Ruden, McClosky, Smith, Schuster and Russell, P.A. Ms. Snow's suit alleged a violation of section 448.101(2)-(3), Florida Statutes (1999), part of what is commonly referred to as Florida's Private Sector Whistle-Blower Act.[1] She also alleges that her termination of employment was a breach of the implied covenant of good faith in her at-will employment contract as well as a violation of public policy. We affirm the trial court's dismissal of the complaint but write to address several aspects of her argument that merit discussion.

FACTS
Because this appeal arises from the dismissal of Ms. Snow's second amended complaint, we must take as true the facts as alleged in the complaint. Fla. Dep't of Health & Rehab. Servs. v. S.A.P., 835 So.2d 1091 (Fla.2002). Ms. Snow, a member of The Florida Bar, was employed by the Ruden, McClosky firm from March 20, 2000, to June 26, 2000, in their Tampa office. She joined Ruden, McClosky along with another, more senior attorney, who was a shareholder and her supervisor at their previous firm. Her former supervisor's position with Ruden, McClosky was of counsel; Ms. Snow was hired as an associate.
Her complaint alleged that Ms. Snow learned that her former supervisor had improperly diverted fees due their former law firm to himself. She believed that this diversion of funds constituted the crime of theft. As an attorney licensed in Florida, Ms. Snow is subject to the Rules Regulating the Florida Bar. In the chapter containing *790 the Rules of Professional Conduct, rule 4-8.3 provides that an attorney "having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority." She claims she was thus ethically bound to report her former supervisor's illegal conduct.
The complaint further alleged that in a series of meetings beginning in May 2000, Ms. Snow informed the managing partner of Ruden, McClosky's Tampa office, the office manager, and the head human resource officer of her belief that her former supervisor's conduct was illegal and that she intended to report the matter to the State Attorney. The managing partner told her she was causing trouble, advised her to think "long and hard" before going to the authorities, and suggested she try to "work things out" with her former supervisor. In June 2000, refusing to join what she believed was Ruden, McClosky's cover-up of the illegal and unethical conduct of her former supervisor, Ms. Snow reported the matter to the State Attorney. When the managing partner learned what she had done, he became angry and told her that she should have allowed the firm to work out the problem internally. She was discharged soon thereafter and allegedly was told that the main office had decided to terminate her employment because her reporting of her former supervisor to the State Attorney had created an unworkable environment.

THE WHISTLE-BLOWER CLAIMS
The two counts of Ms. Snow's second amended complaint asserted an "objection" claim and a "providing information" claim under Florida's Private Sector Whistle-Blower Act. Specifically, she claimed that Ruden, McClosky terminated her for activity protected by section 448.102(2) and (3),[2] because she refused to join in Ruden, McClosky's after-the-fact cover-up of illegal and unethical conduct and provided information to the State Attorney about it. Both of the alleged violations of the Whistle-Blower Act rest on her interpretation that the Rules Regulating the Florida Bar, specifically the Rules of Professional Conduct, qualify as a "law, rule, or regulation" as outlined in the statute. The trial court dismissed her second amended complaint because it found that she failed to state a cause of action under the Whistle-Blower Act.
In this case, we are required to interpret a state statute. To do so, we examine the plain meaning of the words used in the statute. "[I]t is axiomatic that in construing a statute courts must first look at the actual language used in the statute." Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891, 897 (Fla.2002). Here, the critical statutory *791 phrase is "law, rule, or regulation." As defined by section 448.101(4), the term includes "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Ms. Snow advances the proposition that the Rules Regulating the Florida Bar, more particularly rule 4-8.3, meet this definition. We disagree.
A statute is a form of positive law enacted by the legislative branch of government. Similarly, an ordinance is a form of statutory law enacted by a local governmental body, such as a county commission or city council. A regulation is synonymous to a rule enacted pursuant to the administrative law process; a rule or regulation comes into being as a result of a legislative grant of authority to an executive branch department or agency. Each of these terms  statute, ordinance, rule, and regulation  and their meanings are well known to the legislature. "[T]he legislature is presumed to know the meaning of the words it utilizes and to convey its intent by use of specific terms." Brate v. Chulavista Mobile Home Park Owners Ass'n, 559 So.2d 1190, 1193 (Fla. 2d DCA 1990) (quoting Caloosa Prop. Owners Ass'n v. Palm Beach County Bd. of County Comm'rs, 429 So.2d 1260, 1264 (Fla. 1st DCA 1983)). The rules governing the conduct of members of The Florida Bar do not flow from either a legislatively enacted statute, ordinance, or administrative rule. Neither do they originate from any similar federal source. Rather, the rules are promulgated by the Florida Supreme Court, the head of the judicial branch of state government, under the authority given to it by article V, section 15 of the Florida Constitution. Thus, it cannot be said that the Bar rules are either laws, rules, or regulations as defined in section 448.104, despite their designation as "rules." If it is true that Ruden, McClosky dismissed Ms. Snow because she reported her former supervisor to the State Attorney, the law firm's reaction may have been inappropriate, but the plain language of the statute indicates that the Private Sector Whistle-Blower Act does not provide her any redress.
By affirming the order of dismissal based on Florida's Private Sector Whistle-Blower Act, we limit our role to the judicial function of statutory interpretation. Whether it is appropriate to afford whistle-blower protection to an attorney in Ms. Snow's circumstance is a policy-making function left to the legislature. It is not our prerogative to extend, by interpretation, the clear legislative definition. See Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 694 (1918) ("Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.").
Ms. Snow also argues, based on a prior amended complaint, that her at-will employment contract with Ruden, McClosky precludes her discharge. She contends that the contract's implied covenant of good faith operated to bar her employer's actions. We again must disagree.
"The implied covenant of good faith exists in virtually all contractual relationships." Sepe v. City of Safety Harbor, 761 So.2d 1182, 1184 (Fla. 2d DCA 2000). Its purpose is to protect the reasonable expectations of the contracting parties. Cox v. CSX Intermodal, Inc., 732 So.2d 1092 (Fla. 1st DCA 1999). However, the reach of this implied contractual covenant is restricted in several respects. First, the implied covenant is not an independent term within the parties' contract. Thus, it cannot override an express contractual provision. Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285 (11th Cir.2001); *792 see also Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So.2d 1232 (Fla. 4th DCA 2001). Because the implied covenant is not a stated contractual term, to operate it attaches to the performance of a specific or express contractual provision. There can be no cause of action for a breach of the implied covenant "absent an allegation that an express term of the contract has been breached." Ins. Concepts, 785 So.2d at 1234; see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290 (11th Cir.1998). Or, as stated in Avatar Development Corp. v. De Pani Construction, Inc., 834 So.2d 873, 876 (Fla. 4th DCA 2002), "the covenant of good faith cannot be used to create a breach of contract on [one party's] part where there was no breach of any express term of the contract." In Avatar, the court held that the defendant's ulterior motive for the plaintiff's termination had no relevance because their contract gave the defendant the right to terminate the plaintiff at any time and Florida law requires nothing more of the defendant. Id. Thus, the duty of good faith performance does not exist until a plaintiff can establish a term of the contract the other party was obligated to perform and did not. See also Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. 4th DCA 1998) (holding that "a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract"). But see Scott v. County of Ramsey, 180 F.3d 913, 918 (8th Cir.1999) (affirming the giving of a jury instruction stating that employment decisions or actions can be made for "a good reason, bad reason or no reason at all, but they cannot be based on intentional retaliation").
Here, Ms. Snow's amended complaint failed to link the implied covenant of good faith to a breach of an express provision of her at-will employment contract with the Ruden, McClosky law firm. Thus, she did not state a cause of action for which a breach of the implied covenant of good faith can provide her relief.
In conclusion, we hold that Ms. Snow's complaint does not state a cause of action and the trial court was correct to dismiss her suit. See J.R.D. Mgmt. Corp. v. Dulin, 883 So.2d 314 (Fla. 4th DCA 2004) (stating that a plaintiff may not sue for breach of at-will employment).
Affirmed.
STRINGER and WALLACE, JJ., Concur.
NOTES
[1] §§ 448.101-.105, Fla. Stat. (1999).
[2] Section 448.102 provides:

An employer may not take any retaliatory personnel action against an employee because the employee has:
(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.