DAMOORGIAN, J.
 

 Homero Meruelo and the Merco Group of the Palm Beaches (together “the Buyers”) appeal the trial court’s denial of their motion for a directed verdict. The Appel-lee, The Mark Andrew of the Palm Beaches, cross-appeals the trial court’s denial of its motion for summary judgment. We write only to address the trial court’s error in denying the Appellant’s motion for directed verdict as to Count II of the complaint. We affirm as to all other claims of error on appeal and cross-appeal.
 

 The Mark Andrew of the Palm Beaches (“The Mark Andrew”) owned a 4.5 acre piece of real property in West Palm Beach and, in 2001, obtained a development order to build a large continuum care residential community on the property. The development order required The Mark Andrew to begin construction by June 24, 2004 for the development rights to vest. Because of problems obtaining financing, The Mark Andrew property became the subject of a bankruptcy proceeding in 2002. On February 23, 2004, two days before a scheduled bankruptcy sale, Meruelo agreed to purchase the property and entered into a contract with The Mark Andrew. The agreed-upon price was thirty million dollars, with a five million dollar bonus if the conditions of the following addendum were met:
 

 The current site plan for the Property provides for the construction of approximately 784,000 gross square feet of space. In the event Buyer is able to obtain approval to construct a total of 600,000 square feet or more of air conditioned saleable square feet of space, Buyer will pay to Seller an additional Five Million Dollars ($5,000,000.00). The additional $5,000,000.00 payment, if earned, will be due 180 days from the later of the date upon which the final site plan approval is issued or the date upon which the time period for contesting said final site plan has expired.
 

 In a second addendum, Meruelo assigned the contract to Merco.
 

 The Buyers purchased The Mark Andrew property with the intent to construct a large luxury condominium thereon. The property was attractive to the Buyers because of the 2001 development order, which would allow them to construct a large building on the property. On June 23, 2004, the City of West Palm Beach wrote a letter to Andrew N. Adler, Mer-eo’s project manager, confirming that The Mark Andrew’s zoning entitlement had vested in the Buyers. Then, in September 2004, the City adopted an ordinance approving the building of a condominium named Palladio Terrace.
 

 On July 8, 2005, The Mark Andrew filed a complaint against the Buyers for nonpayment of the five million dollar bonus under the addendum. In Count II of the complaint, The Mark Andrew alleged that the Buyers had breached the implied duty of good faith and fair dealing by failing to seek approval of a site plan in excess of 600,000 square feet of air-conditioned sale-able space.
 

 At trial, the parties presented divergent testimony about the amount of square footage the Buyers had obtained approval to build. At the close of The Mark Andrew’s case, the Buyers moved for a directed verdict on Count II. The trial court deferred ruling. After the jury retired to deliberate, the Buyers attempted to renew their motion for directed verdict, but the
 
 *250
 
 trial court said that the motion was “too late.”
 

 The jury returned a verdict in favor of The Mark Andrew as to Count II and awarded five million dollars in damages, in accordance with the bonus clause in the addendum. After the verdict, the Buyers again attempted to renew their motion for directed verdict as to Count II. The trial court denied their motion. The Buyers moved for a judgment in accordance with their motion for a directed verdict and for new trial. The trial court denied all post-trial motions and entered a final judgment in accordance with the jury’s verdict.
 

 The Buyers argue that the trial court erred in denying their motion for a directed verdict because the addendum does not impose any duty on them to
 
 seek
 
 approval to build more than 600,000 square feet of air-conditioned saleable space. We agree.
 

 A trial court should grant a motion for directed verdict when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law.
 
 Dep’t of Children & Family Sens. v. Amara,
 
 944 So.2d 431, 435 (Fla. 4th DCA 2006). The standard for reviewing a trial court’s ruling on a motion for directed verdict is de novo.
 
 Id.
 
 “When an appellate court reviews the grant of a directed verdict, it must view the evidence and all inferences of fact in a light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.”
 
 Frenz Enters., Inc. v. Port Everglades,
 
 746 So.2d 498, 502 (Fla. 4th DCA 1999). Conversely, an appellate court must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party.
 
 Amerifirst Fed. Sav. and Loan Ass’n v. Dutch Realty, Inc.,
 
 475 So.2d 970, 971 (Fla. 4th DCA 1985).
 

 The specific clause of the addendum at issue states that “[i]n the event Buyer is able to obtain approval to construct a total of 600,000 square feet or more of air conditioned saleable square feet of space, Buyer will pay to Seller an additional Five Million Dollars.” The Mark Andrew contends that this clause imposes a duty on the Buyers to seek approval to build more than 600,000 square feet of air-conditioned saleable space, and that they breached the implied covenant of good faith by failing to seek the required approval.
 

 The implied covenant of good faith and fair dealing applies to every contract.
 
 Ins. Concepts & Design, Inc. v. Healthplan Servs.,
 
 785 So.2d 1232, 1234 (Fla. 4th DCA 2001). The covenant of good faith “must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.”
 
 Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.,
 
 710 So.2d 573, 575 (Fla. 4th DCA 1998);
 
 see also S. Internet Sys., Inc. ex rel. Menotte v. Pritula,
 
 856 So.2d 1125, 1127 (Fla. 4th DCA 2003) (noting that allowing a claim of breach of the implied duty of good faith where no enforceable executory contract remains would add an obligation to the contract that the parties did not negotiate);
 
 Ins. Concepts and Design, Inc.,
 
 785 So.2d at 1235;
 
 Avatar Dev. Corp. v. De Pani Constr. Inc.,
 
 834 So.2d 873, 876 (Fla. 4th DCA 2002). The implied duty of good faith cannot be used to vary the fully specified, unambiguous terms of a contract because the court is not at liberty to
 
 *251
 
 change the parties’ bargain as to those terms.
 
 Id.
 

 The purpose of the implied duty of good faith is to protect the parties’ reasonable commercial expectations.
 
 Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,
 
 896 So.2d 787, 791 (Fla. 2d DCA 2005). It is usually raised “when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.”
 
 Publix Super Mkts., Inc. v. Wilder Corp. of Del.,
 
 876 So.2d 652, 654 (Fla. 2d DCA 2004);
 
 see also Sepe v. City of Safety Harbor,
 
 761 So.2d 1182, 1184-85 (Fla. 2d DCA 2000);
 
 Cox v. CSX Intermodal, Inc.,
 
 732 So.2d 1092, 1097 (Fla. 1st DCA 1999). This “discretion” concept applies only where there is an express contractual duty or obligation over which one party has sole discretion.
 
 See, e.g., Sepe,
 
 761 So.2d at 1183 (the contract stated that the city “shall vigorously pursue ... recovery of underpayments” but gave the city “sole discretion” to determine whether pursuit was a justifiable expense);
 
 Cox,
 
 732 So.2d at 1094 (the contract stated that “CSXI shall maintain commodities available from time to time for transport by CONTRACTOR” but gave CSXI discretion to determine the amount of freight and number of loads for transport).
 

 The addendum to the contract for the sale of The Mark Andrew Property did not impose any duty on the Buyers to seek approval for a building of a certain size. It was purely a bonus provision whereby The Mark Andrew would receive an additional five million dollars if the Buyers chose to seek approval and were able to obtain approval to build more than 600,000 square feet of air-conditioned saleable space. In short, the contract left the decision of whether to seek approval completely in the discretion of the Buyers.
 

 Because the addendum did not expressly impose on the Buyers a duty to seek approval for a 600,000 square foot building, there can be no implied duty to act in good faith in seeking such approval.
 
 See Hosp. Corp. of Am.,
 
 710 So.2d at 574;
 
 Publix Super Mkts.,
 
 876 So.2d at 654. In other words, there is no express duty to which the implied duty of good faith can relate. If we were to impose a duty to seek approval, we would be stacking implication upon implication — first implying a duty to seek approval and then implying a duty to act in good faith in seeking that approval. The second implication is sanctioned by the law in this state; the first is not.
 

 We disagree with The Mark Andrew’s contention that this issue was not preserved for review because the Buyers failed to renew the motion for directed verdict at the close of all the evidence. When a motion for a directed verdict is made at the close of the plaintiffs case and denied, it must be renewed at the close of all the evidence to preserve it for appellate review.
 
 Keyes Co. v. Shea,
 
 372 So.2d 493, 494 (Fla. 4th DCA 1979). If the trial court reserves ruling on the motion, the defendant must renew the motion at the close of all the evidence.
 
 6551 Collins Ave. Corp. v. Mitten,
 
 104 So.2d 337 (Fla.1958). The only exception is where “the insufficiency of the evidence constitutes plain error apparent on the face of the record which if not noticed will result in a manifest miscarriage of justice.”
 
 City of Pompano Beach v. Edwards,
 
 129 So.2d 144, 147 (Fla. 2d DCA 1961);
 
 see also Country Manors Ass’n v. Master Antenna Sys., Inc.,
 
 534 So.2d 1187, 1191 (Fla. 4th DCA 1988),
 
 Fee, Parker & Lloyd, P.A. v. Sullivan,
 
 379 So.2d 412, 418 (Fla. 4th DCA 1980),
 
 Pickard v. Mar. Holdings Corp.,
 
 161 So.2d 239 (Fla. 3d DCA 1964). This case falls within the exception because the plain language of the addendum shows that the Buyers
 
 *252
 
 had no duty to seek approval to build more than 600,000 square feet of air-conditioned saleable space. A manifest miscarriage of justice would result if they were held to have breached a duty that does not exist.
 

 Accordingly, we reverse the trial court’s denial of the Buyers motion for directed verdict on Count II and remand for entry of a directed verdict in accordance with this opinion. We affirm on all other claims of error in the appeal and cross-appeal.
 

 Affirmed in part, Reversed in part and Remanded.
 

 WARNER and STEVENSON, JJ., concur.