DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JD DEVELOPMENT I, LLC,

Appellant,

v.

ICS CONTRACTORS, LLC,

Appellee.

No. 2D21-2759

_____

September 30, 2022

Appeal from the Circuit Court for Collier County; Lauren L. Brodie, Judge.

David P. Fraser of Holmes Fraser, P.A., Naples, for Appellant.

Joseph A. Davidow and Krithika S. Venugopal of Willis & Davidow, LLC, Naples, for Appellee.

BLACK, Judge.

JD Development I, LLC, appeals from the final judgment

entered in favor of ICS Contractors, LLC, for breach of contract

following a jury trial. ICS Contractors asserted below that JD

Development had breached the parties' written contract—a bid for the performance of site development work—by failing to pay several invoices for work ICS Contractors had performed under the express provisions of the bid.  On appeal, JD Development contends that because ICS Contractors failed to present any evidence establishing that the work identified in the unpaid invoices was within the scope of the bid, the trial court erred in denying its motion for directed verdict.[1]  We agree and therefore reverse the final judgment.  JD Development raises several other issues on appeal, but because the trial court's failure to grant the motion for directed verdict is dispositive, we need not address those other issues.

---

[1] JD Development uses the terms directed verdict and involuntary dismissal interchangeably.  While the law applicable to motions for directed verdict and motions for involuntary dismissal is largely the same, *see Thompson v. Fla. Cemeteries, Inc.*, 866 So. 2d 767, 769 (Fla. 2d DCA 2004) (citing *Day v. Amini*, 550 So. 2d 169, 171 (Fla. 2d DCA 1989)), when a case is tried before a jury, it is appropriate for a party to seek a verdict in its favor rather than to move for involuntary dismissal, *see Tillman v. Baskin*, 260 So. 2d 509, 510-11 (Fla. 1972); *cf. George Anderson Training & Consulting, Inc. v. Miller Bey Paralegal & Fin., LLC*, 313 So. 3d 214, 216 (Fla. 2d DCA 2021) (treating the directed verdict as an involuntary dismissal since the case was not tried before a jury).

On March 5, 2015, ICS Contractors submitted a unit price bid to JD Development for the performance of site development work in Collier County on a project called Legacy Estates. The bid was based on a site plan and two subsequent revisions to the site plan created by an engineering firm. The bid is comprised of eight categories of work plus a "Notes" section enumerating various work activities that were not included in the bid price. On May 6, 2015, JD Development accepted ICS Contractors' bid, and ICS Contractors began work on the project. On January 9, 2016, after ICS Contractors had completed three out of the eight categories of work set forth in the bid, JD Development terminated ICS Contractors from the project. Thereafter, ICS Contractors submitted an account statement, dated August 31, 2016, to JD Development reflecting a balance due to ICS Contractors in the amount of $182,827.15 for work that had been performed on the Legacy Estates project prior to ICS Contractors' termination. According to account statement, JD Development failed to remit full payment for several invoices that had been submitted by ICS

Contractors: invoice 1682, invoice 1699 (partially paid), invoice 1704, and invoices 1720 through 1725.

On September 12, 2019, after JD Development failed to pay ICS Contractors the outstanding balance set forth in the account statement, ICS Contractors filed a complaint against JD Development. The complaint was amended on March 10, 2020, and included five counts: breach of contract, account stated, open account, unjust enrichment, and quantum meruit. In the breach of contract claim, ICS Contractors alleged that JD Development breached the bid by failing to pay in full several invoices for work ICS Contractors had performed pursuant to the express written provisions of the bid. ICS Contractors sought $182,827.15 in damages. The bid was attached to the amended complaint, as was the account statement.[2]

A jury trial was held on July 27 and July 28, 2021. During trial, ICS Contractors conceded that invoices 1682 and 1704 had been paid by JD Development, leaving only invoice 1699 (to the

---

[2] On May 26, 2020, JD Development filed its answer and affirmative defenses. It also raised three counterclaims which are not at issue in this appeal.

4

extent that a portion of it remained unpaid) and invoices 1720 through 1725 in dispute. As a result, the amount of damages sought by ICS Contractors was reduced to $105,214.84.[3]

Jason Clark, president of ICS Contractors, testified at trial. During direct examination he explained that ICS Contractors had based its bid on the November 2014 site plan and two subsequent revisions to the site plan—dated January 2015 and February 2015, respectively. Although the site plan was revised several times after the bid had been prepared by ICS Contractors in March 2015—resulting in changes to the work to be completed by ICS Contractors—a subsequent, amended, or revised contract was never executed. As various work activities were completed on the project, ICS Contractors would submit invoices to JD Development. The account statement, which was admitted into evidence, reflected all of the invoices submitted by ICS Contractors to JD Development for the work ICS Contractors had completed on the Legacy Estates project prior to its termination. All of the invoices reflected in the

---

[3] It is noted that the sum of the balances due in the disputed invoices is actually $105,213.95, not $105,214.84.

account statement—both paid and unpaid—were also admitted into evidence. Each invoice includes a brief description of what it is for under a heading titled "ACTIVITY."

Mr. Clark testified that the work activity identified in invoice 1699—crushing and removal of material followed by regrading—was performed pursuant to a "conversation on 8-26-2015."[4] Invoices 1720 through 1725 include charges for renting equipment; invoice 1720 also includes a charge for hourly labor. Mr. Clark stated that the equipment was needed to perform additional work as a result of revisions to the site plan. An email sent by Mr. Clark to a representative of JD Development dated November 24, 2015, was admitted into evidence. According to Mr. Clark, he sent the email after Jim Drescher, the owner of JD Development, had requested that "the grades be raised on the retention ponds and . . . the rear berm." In the email, Mr. Clark confirmed that the additional work requested by Mr. Drescher was "not contract work." Mr. Clark explained that the work referenced in the email is reflected in the

---

[4] Invoice 1699 states that the crushing, removal, and regrading was done pursuant to a conversation that occurred on August 28, 2015, not August 26, 2015.

6

November and December invoices, which would include invoices 1720 through 1723. No testimony was elicited during direct examination connecting the work activities set forth in the disputed invoices to any express provision of the bid.

During cross-examination, Mr. Clark conceded that while most of the work activities referenced in the invoices that had been paid by JD Development are reflected in the bid, the work activities referenced in the unpaid invoices are not. According to Mr. Clark, the work activities referenced in invoices 1720 through 1725 are not reflected in any of the bid's eight categories of work because those activities became necessary only after revisions—revisions that postdated the bid—were made to the site plan. Mr. Clark explained that ICS Contractors could not have included the work activities reflected in these invoices in its bid since that work had not been contemplated by the November 2014 site plan or the January 2015 and February 2015 revisions to the site plan. In an attempt to connect the work activities set forth in the disputed invoices to the bid, Mr. Clark testified generally as follows: "[The bid] says exclusion, unforeseen buried items, removal and

replacement of unsuitable material is excluded. That would be negotiated at the time if found—which is exactly what we did with Mr. Drescher." The exclusions referenced by Mr. Clark are listed in the "Notes" section of the bid, which states in part that the "Price does not include: 1.) Testing, Survey Permits or Fees[;] 2.) Unforeseen or buried items[;] 3.) Removal or replacement of unsuitable materials [;] or 4.) Removal or replacement of existing fence." Contrary to Mr. Clark's testimony, the bid does not state that the parties would negotiate the price for any work activities excluded from the bid. During redirect examination, Mr. Clark testified generally about the exclusions listed in the "Notes" section of the bid but did not expressly state that the work reflected in the disputed invoices fell within the exclusions.

At the close of the evidence, JD Development moved for a directed verdict on the breach of contract count.[5] JD Development

---

[5] JD Development also moved for directed verdict on the four other counts of the amended complaint. The trial court denied JD Development's motion for directed verdict on the open account, unjust enrichment, and quantum meruit counts. However, the trial court granted JD Development's motion for directed verdict on the account stated count.

argued that ICS Contractors had pleaded a claim for breach of the written bid—and not for breach of any other written or oral agreement—but had failed to present any evidence establishing that the work activities identified in the disputed invoices correlated to any express provision of the bid. In response, ICS Contractors argued that the invoiced work was contemplated by the exclusions enumerated in the "Notes" section of the bid even though "it's not expressly stated" in the bid. The motion for directed verdict on the breach of contract count was denied.

ICS Contractors' claims for breach of contract, open account, and unjust enrichment—also referred to as contract implied in law—were submitted to the jury. Though quantum meruit—also referred to as contract implied in fact—is a distinct cause of action from unjust enrichment, *see F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021), ICS Contractors agreed to the trial court instructing the jury on only its claim for unjust enrichment/contract implied in law. The jury returned a verdict in favor of ICS Contractors for breach of contract and awarded ICS Contractors $105,214.84 in damages.

9

Thereafter, the trial court entered the final judgment in favor of ICS Contractors in accord with the verdict. This appeal followed.

We review the trial court's ruling on JD Development's motion for directed verdict de novo. *See Geico Gen. Ins. v. Hoy*, 136 So. 3d 647, 651 (Fla. 2d DCA 2013). In doing so, we apply the same test that the trial court applied in ruling on JD Development's motion:

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

*Id.* (quoting *Sims v. Cristinzio*, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005)). And so the trial court's denial of JD Development's motion for directed verdict must stand "if any reasonable view of the evidence could sustain a verdict in favor of" ICS Contractors. *See Meruelo v. Mark Andrew of Palm Beaches, LTD.*, 12 So. 3d 247, 250 (Fla. 4th DCA 2009) (citing *Amerifirst Fed. Sav. & Loan Ass'n v. Dutch Realty, Inc.*, 475 So. 2d 970, 971 (Fla. 4th DCA 1985)).

10

"An essential element of a claim for breach of contract is the existence of a material breach of a contractual duty." *F.H. Paschen*, 311 So. 3d at 47. Here, ICS Contractors failed to present any evidence establishing that by failing to pay the disputed invoices JD Development had breached the bid—the only contract upon which ICS Contractors had sued.

It is undisputed that none of the work activities set forth in the unpaid invoices fell within the scope of the three work categories of the bid actually completed by ICS Contractors prior to its termination. Mr. Clark's testimony confirmed what is stated on invoice 1699—that the work referenced in that invoice was performed pursuant to a "conversation" that postdated the bid by several months. Mr. Clark further testified that the work referenced in invoices 1720 through 1725 was performed as a result of site plan revisions that postdated the bid such that ICS Contractors could not have possibly included those work activities in the bid. Mr. Clark's testimony and his November 24, 2015, email further established that the work referenced in the November and December invoices—invoices 1720 through 1723—was "not contract

work." Finally, Mr. Clark's testimony that the work activities referenced in the disputed invoices fell within the express exclusions in the "Notes" section of the bid actually supports JD Development's position: if the work activities referenced in the disputed invoices are of the type that was expressly excluded from the bid, then clearly the bid did not reflect an agreement as to the performance of—and payment for—those work activities. Stated differently, the bid did not require ICS Contractors to perform those work activities and in turn it did not require JD Development to compensate ICS Contractors for performing those work activities. *See JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508-09 (Fla. 2d DCA 2020) (explaining that to prove a claim for breach of contract, the plaintiff must establish in part that "the defendant 'failed to do something essential which the contract required [the defendant] to do' " (alteration in original) (quoting Fla. Std. Jury Instr. (Contr. & Bus.) 416.4)). Whether the parties may have orally agreed to the performance of those work activities or whether a written document other than the bid reflects the parties' agreement as to the performance of those work activities has no

bearing on whether the trial court properly denied the motion for directed verdict on the breach of contract claim. ICS Contractors pleaded a claim for breach of the written bid and proceeded under that legal theory at trial. And since no reasonable view of the evidence could sustain a verdict in favor of ICS Contractors on its breach of contract claim—even when viewing testimony and evidence in the light most favorable to ICS Contractors—we hold that the trial court erred in denying JD Development's motion for directed verdict with respect to this claim.

We therefore reverse the final judgment entered in favor of ICS Contractors on its breach of contract claim and remand for entry of a final judgment in favor of JD Development.

Reversed and remanded.


NORTHCUTT and KHOUZAM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.