# Third District Court of Appeal

## State of Florida

Opinion filed October 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0414
Lower Tribunal No. 19-19518
_____


**AAA Capital Funding, Inc.,**
Appellant,

vs.

**Gladys Desange, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Law Offices of David A. Frankel P.A., and David A. Frankel (Hollywood), for appellant.

Law Offices of Kertch Conze, P.A., and Kertch J. Conze (Miramar); James G. Bishop (Lakeland), for appellees.


Before SCALES, LINDSEY and LOBREE, JJ.

PER CURIAM.

Appellant AAA Capital Funding, Inc. ("AAA"), the defendant below, appeals a final judgment rendered after a jury found AAA liable for its negligent hiring and retention of Ileana Miranda and awarded appellees Gladys Desange, Daniela Lavache and Cliford Jean-Charles, the plaintiffs below, $45,000 in damages. We reverse the final judgment because the plaintiffs failed to present the evidence required to support their damages theory. Specifically, the plaintiffs failed to show that, but for AAA's negligent hiring and retention of Miranda, the property damage sustained by the plaintiffs' home would have been covered by an insurance policy that the plaintiffs thought had been procured for them by Miranda. See Capell v. Gamble, 733 So. 2d 534, 535 (Fla. 1st DCA 1998).

## I.    Relevant Background

AAA is a mortgage brokerage company that first hired Miranda in 2000. In 2003, Miranda was arrested and charged with grand theft in the third degree, organized fraud, and six counts of forgery. Miranda was not convicted of these crimes. In 2008, AAA laid off Miranda because of the real estate market crash. In 2012, Miranda was charged with organized fraud, a mortgage lending license violation, mortgage fraud, and grand theft. Miranda was convicted of grand theft, and later for a violation of her probation associated with her grand theft conviction. Being fully aware of Miranda's

2

criminal history, AAA rehired Miranda in approximately 2015.

In 2017, the plaintiffs engaged the services of AAA to serve as their mortgage broker for the purchase of a home located in Homestead, Florida. The plaintiffs were led to believe that Miranda was a loan processor, in part because Miranda, for the purposes of obtaining a mortgage for the plaintiffs, collected the plaintiffs' bank statements, drivers' licenses and social security documents.[1]

During the plaintiffs' attempts to procure a purchase mortgage for the home, Miranda offered to assist the plaintiffs in obtaining property insurance, a requirement of whatever lender would be procured to finance the home's purchase. The plaintiffs accepted Miranda's offer, and Miranda came to the plaintiffs' home and collected a check in the amount of $2,721.46. This check – made payable to "Florida First," an insurance agency – was ostensibly for an insurance premium to bind property insurance for the home the plaintiffs sought to purchase. Unbeknownst to the plaintiffs, however, Miranda deposited this check into Miranda's own bank account, never delivering the check to Florida First.

Presumably to demonstrate Miranda's procurement of insurance for the plaintiffs, Miranda delivered to the plaintiffs a Certificate of Property

---

[1] AAA maintained that Miranda was an office assistant with limited duties.

3

Insurance ("COI"), bearing a July 6, 2017 date. This COI identified "Florida 1st Insurance & Tax Svc. I." as the producer, the plaintiffs as the insureds, and "Nations Direct Mortgage, LLC d/b/a Motive Lending" (presumably the mortgagee) as the certificate holder. The COI identified "GeeVera Specialty, Ins" as the insurer and, stated that, in exchange for an annual premium of "$4,381.52," GeeVera was providing property insurance for the home under "policy number GC7CD46112," for the "9/27/2017 – 9/27/2018" policy period. Further, the COI stated that the type of insurance provided was basic property insurance with a "$2,500" deductible, and wind coverage with a "5%" deducible. The COI stated that GeeVera was providing an "HO-3 POLICY WITH HURRICANE COVERAGE" and "100% REPLACEMENT COST GURANTEED." The COI was executed by a "Richard Fasano."

The plaintiffs closed on the property in August 2017,[2] and a few weeks later the plaintiffs' home suffered damage as a result of Hurricane Irma. The plaintiffs contacted Florida First to file a claim and it was only then that they learned that Miranda had not remitted any premium check to bind coverage for the plaintiffs' home, and that there was no property insurance for their

---

[2] Our review of the record contains no explanation for discrepancies in the COI. For example, the purported policy's effective date was a full month after the closing date, and the $4,381.52 premium reflected on the COI is almost twice the $2,721.46 premium payment paid by the plaintiffs to Miranda to procure the policy.

4

home.

In June 2019, the plaintiffs filed the instant action against AAA, alleging that AAA had negligently hired and retained Miranda.[3] The case went to trial in November 2022. Regarding their damages claim, the plaintiffs argued that they were entitled to the amounts that a property insurer would have paid to them, or on their behalf, had Miranda bound the insurance coverage reflected in the COI, instead of pilfering the plaintiffs' premium payment. In support of this theory of damages, and over defense counsel's objection, the plaintiffs presented repair estimates of $14,183 for mold remediation and $14,900 for other home repairs and testimony that they financed $26,146 to replace the home's roof.

At the close of all evidence, AAA sought a directed verdict, arguing that "the plaintiff has not presented any evidence that even if they had received the insurance it would have covered these losses." To this end, AAA challenged the sufficiency of the plaintiffs' evidence, noting that (i) the COI, unlike a standard property insurance policy, neither defined a "covered loss" nor set forth any coverage limits, and (ii) the plaintiffs' repair estimates could not establish that the plaintiffs would have received a loss payment from the

---

[3] The plaintiffs obtained a default against Miranda on a fraud claim. The plaintiffs also asserted claims against several other parties, but those claims were either dismissed or resolved at summary judgment.

insurer had a property insurance policy been procured on their behalf.

The trial court denied AAA's motion for directed verdict. The jury returned a verdict in the plaintiffs' favor, finding that AAA had negligently hired or retained Miranda resulting in the plaintiffs suffering damages, and awarded the plaintiffs $45,000. AAA timely appealed the resulting final judgment.

## II.    Analysis[4]

While AAA makes several arguments on appeal, we need address only one and we conclude the trial court should have granted AAA's directed verdict motion premised on the plaintiffs' failure to adduce any evidence supporting their damages theory.[5]

---

[4] "We review a trial court's denial of a motion for directed verdict *de novo*." Wheeler v. City of Ft. Lauderdale, 367 So. 3d 525, 527 (Fla. 4th DCA 2023). "[A]n appellate court must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So. 3d 247, 250 (Fla. 4th DCA 2009).

[5] Because our reversal is predicated on the plaintiffs' failure to present evidence to support their theory of damages, we need not, and therefore do not, address whether the plaintiffs established any of the other necessary elements of their negligent hiring and retention claim. For the purposes of this appeal, though, we assume that the plaintiffs established that AAA negligently hired and retained Miranda, and – without deciding the issue – that a plaintiff, in a negligent/hiring retention case, may recover, as damages, those amounts that an insurer would have paid, had it not been for the negligent hiring/retention.

6

The plaintiffs did not seek to recover from AAA the $2,721.46 that Miranda had stolen. Rather, the plaintiffs sought to hold AAA liable for the hurricane damages sustained by their uninsured home. In other words, the plaintiffs sought to hold AAA accountable as if AAA had been the plaintiffs' insurer. AAA argues that the plaintiffs' pursuit of such damages required the plaintiffs to adduce evidence of what the policy would have paid had it been procured.

We agree with AAA and analogize the instant matter to a negligent procurement of insurance case, i.e., a case in which a plaintiff seeks damages against an insurance agent for the agent's negligent failure to procure insurance that, had it been procured, would have benefitted the plaintiff. "The measure of damages in a negligent procurement of insurance case is what would have been covered had the insurance been properly obtained." Capell, 733 So. 2d at 535.

In this case, the plaintiffs presented evidence that AAA's employee, Miranda, led the plaintiffs to believe that the property insurance reflected on the COI had been procured on their behalf. During closing argument, the plaintiffs' attorney argued that had this insurance policy been obtained, "they would have been able to submit a claim [to Florida First], and then go on from there as anybody else in Florida." Yet, the plaintiffs did not present any

7

evidence – via a Florida First representative, an insurance expert witness, or otherwise – of what Florida First's HO-3 insurance policy (or any similar HO-3 policy) would have covered had property insurance been procured.

While the plaintiffs may have established that they labored under the impression that Miranda had procured an HO-3 homeowner's insurance policy that included basic property and windstorm coverage, in our view, to successfully pursue their damages theory, it was incumbent upon the plaintiffs to (i) present evidence of the policy terms and coverages under such an insurance policy, and (ii) establish the loss payments that would have been made under such a policy. The plaintiffs' failure to adduce any such evidence constitutes a lack of proof and the trial court should have granted AAA's motion for directed verdict on this basis. See GEICO Gen. Ins. Co. v. Hoy, 136 So. 3d 647, 651 (Fla. 2d DCA 2013) ("GEICO argues that the trial court should have granted its motion for directed verdict because Mrs. Hoy failed to establish the damages element of her claim for fraud in the inducement. We agree.").

We find the Capell case instructive. In Capell, a homeowner went to an insurance agent for a "family insurance checkup" that resulted in some changes to the homeowner's insurance policy. 733 So. 2d at 534-35. The agent, though, did not recommend flood insurance coverage. Id. at 535.

8

Several months later, a flood severely damaged the homeowners' home, resulting in approximately $57,000 in uninsured flood damages. Id.

The homeowners brought an action against the agent for the negligent failure to advise of the need for flood insurance and the negligent failure to procure flood insurance. Id. While there was conflicting evidence at trial concerning the agent's duty to procure flood insurance for the homeowners, the homeowners "did not present a copy of a standard flood insurance policy (if one exists) or expert testimony as to what would be covered under a standard flood insurance policy[.]" Id. Additionally, the homeowners "made no attempt to show what policy would have been obtained" had the agent not been negligent. Id. Instead, as in this case, "the only evidence presented . . . concerned the amount of damages sustained" by the home. Id.

The agent challenged the sufficiency of the homeowners' evidence, arguing "both at trial and in posttrial proceedings that [the homeowners] had failed to present sufficient evidence on the issue of damages incurred by them as a result of [the agent's] alleged negligence." Id. at 534. The trial court disagreed and entered final judgment in favor of the homeowners. Id. On appeal, the First District reversed the final judgment and directed that judgment be entered in favor of the agent, concluding that the homeowners' evidence of the "amount of damages caused by the flooding . . . [did not]

9

necessarily reflect what items actually would have been covered if flood insurance had been obtained." Id. at 535.

Although, in this case, the plaintiffs' cause of action is premised on negligent hiring and retention rather than negligent insurance procurement, the dispositive issue – whether there was adequate proof to support this theory of damages – is identical. Namely, while the plaintiffs may have proven AAA's negligence in employing and retaining Miranda, Miranda's theft of the plaintiffs' premium payment, and the full amount of damages that their home sustained as a result of Hurricane Irma, the plaintiffs neither proved nor attempted to prove what damages would have been covered had Miranda procured the insurance policy identified in the COI (or any similar policy), rather than stealing the plaintiffs' premium payment. Because the plaintiffs failed to produce any evidence reflecting what would have been covered had the policy been procured, the trial court should have granted AAA's motion for directed verdict.

We recognize that the result is harsh, but we are nevertheless compelled to reverse the final judgment for the plaintiffs and remand for the entry of judgment for AAA. Id.

Reversed and remanded.